T.C. Memo. 2008-140

UNITED STATES TAX COURT

GRUTMAN-MAZLER ENGINEERING INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14843-06.                    Filed May 21, 2008.

Gregory Mazler (an officer), for petitioner.

<u>Jonathan Sloat</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $1,529.45 deficiency
in petitioner's Federal income tax for the taxable year ended
October 31, 2004 (the year at issue).[1]  The sole issue for

---

[1]Respondent also determined that petitioner was liable for
additions to tax under sec. 6651(a)(1) and (2) of $891.49 and
$396.22, respectively.  Respondent concedes these additions to
tax.

decision is whether petitioner is a qualified personal service corporation subject to a special flat 35-percent income tax rate under section 11(b)(2) rather than the graduated income tax rates for corporations under section 11(b)(1).[2]  We hold that petitioner is a qualified personal service corporation.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner's principal place of business was California at the time it filed the petition.

Petitioner is an engineering company incorporated in California in 1990.  Petitioner provides engineering services in the Los Angeles area, including planning subdivisions. Specifically, petitioner prepares grading plans, designs plans for storm drains, sewers, streets, water lines and utilities, as well as prepares tract maps for subdivisions.

Petitioner had two owners during the year at issue.  Ruvin Grutman (Mr. Grutman), a registered civil engineer and licensed land surveyor, owned 60 percent of the value of petitioner's stock, while Gregory Mazler (Mr. Mazler) owned the remaining 40 percent.  Mr. Mazler is not a registered civil engineer although he has a degree in engineering.  Mr. Grutman performed engineering services for petitioner and also oversaw all of

---

[2]All section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise indicated.

petitioner's activities during the year at issue.  Petitioner had 28 employees in total, including Mr. Grutman and Mr. Mazler.

Petitioner had a "Planning Department" that consisted of three employees.[3]  The employees in the Planning Department were Mr. Mazler, Veronica Granovsky (Ms. Granovsky) and Eugene Steinberg (Mr. Steinberg).  Mr. Mazler's duties included submitting tentative tract maps and grading plans to local governments for approval and also supervising the activities of Ms. Granovsky and Mr. Steinberg.  Mr. Mazler performed some engineering services.  These services included presenting maps to planning departments in public hearings, but these services constituted only a small portion of his workload.  Ms. Granovsky's and Mr. Steinberg's duties included assisting individuals performing petitioner's engineering, land surveying, and mapping activities.  Ms. Granovsky and Mr. Steinberg also submitted designs, plans, specifications and engineering reports to local governments.  Ms. Granovsky also coordinated the work of professional, technical or special consultants.  Mr. Steinberg was identified in petitioner's organizational charts as Ms. Granovsky's assistant.  Both Ms. Granovsky and Mr. Steinberg also

---

[3]The organizational chart submitted to the Court as an exhibit refers to this department as the Planning Department. Mr. Grutman referred to this department as the processing department in his testimony.  We shall refer to this department as the Planning Department.

spent a small amount of time processing bonds for the engineering projects.

Petitioner's financial accounts did not account separately for the Planning Department or for income from processing plans through local governments. Petitioner's ledgers differentiated income from civil engineering, construction management, land surveying, and rental income but did not account separately for income of the Planning Department.

Petitioner reported on its tax return for the year at issue that it was engaged in engineering. It reported that its taxable income was subject to the graduated income tax rates for corporations under section 11(b)(1). Respondent issued petitioner a deficiency notice in which he determined that petitioner was a qualified personal service corporation subject to the flat 35-percent tax rate under section 11(b)(2).[4] The deficiency represents the increase in petitioner's Federal income tax that results from applying the flat 35-percent tax rate to the amounts of taxable income shown on the return for the year at issue. Petitioner timely filed a petition.

                              OPINION

We are asked to decide whether petitioner is a qualified personal service corporation taxed at a flat 35-percent rate

---

[4]The flat 35-percent tax rate set forth in sec. 11(b)(2) equals the highest marginal corporate tax rate set forth in sec. 11(b)(1) for the year at issue.

under section 11(b)(2) rather than the graduated rates for corporations under section 11(b)(1).  A qualified personal service corporation is any corporation that satisfies a function test and an ownership test.  Sec. 448(d)(2)(A) and (B)(i); W.W. Eure, M.D., Inc. v. Commissioner, T.C. Memo. 2007-124; sec. 1.448-1T(e)(3), (4), and (5), Temporary Income Tax Regs., 52 Fed. Reg. 22768 (June 16, 1987), as amended by T.D. 8329, 56 Fed. Reg. 485 (Jan. 7, 1991), and T.D. 8514, 58 Fed. Reg. 68299 (Dec. 27, 1993).  Petitioner argues that it is not a qualified personal service corporation because it does not meet either the function test or the ownership test.  We disagree and find that petitioner satisfies both tests and is therefore a qualified personal service corporation.  We shall consider each test in turn.[5]

The Ownership Test

The ownership test is met when 95 percent or more of the corporation's stock is held by employees performing services for the corporation in connection with activities involving a qualifying field.  Sec. 448(d)(2); sec. 1.448-1T(e)(5)(i), Temporary Income Tax Regs., supra.  The qualifying field in this case is engineering (including surveying and mapping).  See sec. 1.448-1T(e)(4)(i)(C), Temporary Income Tax Regs., supra.

---

[5]The Court ruled at trial that petitioner had the burden of proof.  On brief, petitioner asks the Court to reconsider its ruling.  The Court declines to reconsider its ruling.  The burden of proof remains with petitioner.

Mr. Grutman owned 60 percent of petitioner's stock and Mr. Mazler owned 40 percent of petitioner's stock during the year at issue. Mr. Grutman was a licensed engineer and land surveyor who performed engineering services for petitioner. Mr. Mazler had an engineering degree and performed at least some engineering services during the year at issue although it was just a small portion of his workload. Petitioner argues, however, that Mr. Mazler's ownership fails to meet the ownership test because his activities fit solely in the Planning Department, not in the general engineering field. We disagree.

First, section 448 requires only that the employees owning the stock perform services in connection with the qualifying field activities. Sec. 448(d)(2). There is no requirement in the ownership test that the stockholder-employees perform a certain percentage of their services, or substantially all of their services, in the qualifying field or in connection with the qualifying field. Mr. Mazler's performance of some engineering services during the year at issue therefore means that 100 percent of the stock was held by employees who performed engineering services. See id. Further, as we shall more fully explain below, the activities of the Planning Department constitute engineering activities or activities incident to engineering activities. Accordingly, Mr. Mazler's activities in the Planning Department are also in a qualifying field. We

conclude that petitioner meets the ownership test because both owners of petitioner's stock performed services in the engineering field.

The Function Test

We shall now turn to the function test. To meet the function test, 95 percent or more of employees' time must be spent providing services in one of several enumerated fields, including engineering. Sec. 448(d)(2); sec. 1.448-1T(e)(4)(i), Temporary Income Tax Regs., supra. The performance of any activity incident to the actual performance of services in a qualifying field is considered the performance of services in that field under the function test. Sec. 1.448-1T(e)(4)(i), Temporary Income Tax Regs., supra. Activities incident to the performance of services in a qualifying field include the supervision of employees engaged in directly providing services to clients and performing administrative and support services incident to such activities. Id.

Petitioner argues that it does not meet the function test because the activities of the Planning Department do not constitute engineering. Again, we disagree.

Engineering is not defined in section 448 or the corresponding regulations. We may examine state law to determine whether an activity is within a qualifying field. See Rainbow Tax Serv., Inc. v. Commissioner, 128 T.C. 42, 47 (2007).

California law defines civil engineering as the following studies or activities in connection with fixed works:

> (a) The economics of, the use and design of, materials of construction and the determination of their physical qualities.
>
> (b) The supervision of the construction of engineering structures.
>
> (c) The investigation of the laws, phenomena and forces of nature.
>
> (d) Appraisals or valuations.
>
> (e) The preparation or submission of designs, plans and specifications and engineering reports.
>
> (f) Coordination of the work of professional, technical, or special consultants.
>
> (g) Creation, preparation, or modification of electronic or computerized data in the performance of the activities described in subdivisions (a) through (f).

Cal. Bus. & Prof. Code sec. 6731 (West 1995) (emphasis added).

Accordingly, under California law, preparing and submitting designs, plans and specifications, and engineering reports and coordinating the work of consultants are civil engineering activities. Id. Activities incident to civil engineering activities are also qualifying activities. Sec. 1.448-1T(e)(4)(i), Temporary Income Tax Regs., supra. Accordingly, activities that are incident to preparing and submitting designs, plans and specifications and engineering reports also constitute qualifying activities. Id.

Petitioner's Planning Department undertook activities such as submitting designs, plans, tentative tract maps, grading plans, and engineering reports to local governments and coordinating other professionals. Each of these activities constitutes civil engineering under California law and is therefore a qualifying activity. Petitioner's Planning Department also assisted and supported engineers in other departments. This activity is incident to civil engineering activities and is also therefore a qualifying activity.

Petitioner argues that civil engineering may only be performed by individuals with a civil engineering license and none of the Planning Department's employees had a license. Petitioner's argument is misplaced. Mr. Grutman, a registered civil engineer, oversaw all of petitioner's operations. A subordinate to a civil engineer is exempt from licensure if he or she performs only in that capacity. Cal. Bus & Prof. Code Sec. 6740 (West Supp. 2008). The Planning Department employees' lack of engineering licenses thus does not preclude them from performing qualifying activities. See also Rainbow Tax Serv., Inc. v. Commissioner, supra at 46-47 (rejecting argument that accountants cannot perform accounting services where they lack CPA licenses).

Moreover, even if we accepted petitioner's argument that all the activities performed by the Planning Department were not

qualifying activities, petitioner has failed to prove that such activities exceeded 5 percent of all employees' time. Petitioner introduced incomplete time records for its employees. Petitioner produced timesheets for Ms. Granovsky that covered the entire taxable year but produced timesheets for Mr. Steinberg only for July 15, 2004, through the end of the taxable year, less than 4 months. Petitioner produced no timesheets for Mr. Mazler and no timesheets for the 25 other employees who were not in the Planning Department. The lack of evidence makes it impossible to determine that the activities of the Planning Department constituted more than 5 percent of all the activities of petitioner. Petitioner's failure to produce the time records of the other employees leads us to infer that if such evidence were introduced, it would be unfavorable to petitioner. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Petitioner urges us to find that the Planning Department constituted more than 5 percent of the employees by pointing out that dividing three employees by the 28 total employees yields a number larger than 5 percent. We can do the math, but we are unconvinced of the meaning of the result. Petitioner's argument assumes that the employees in the Planning Department performed no services in qualifying fields, which, as discussed above, is incorrect. Petitioner's argument also assumes that each employee

performed exactly the same amount of services for petitioner. There is no evidence in the record to support this assumption.

Petitioner relies on Alron Engg. & Testing Corp. v. Commissioner, T.C. Memo. 2000-335, to support its argument that it is not a qualified personal service corporation. Alron Engg. is distinguishable on many grounds. The company in Alron Engg. performed both engineering services and geotechnical testing services. Id. We found in Alron Engg., after examining Wisconsin law, that geotechnical testing did not constitute engineering. Id. Here, on the other hand, the activities performed by the Planning Department constitute civil engineering under California law and are therefore qualifying activities.

Further relying on Alron Engg., petitioner argues that petitioner could have separately negotiated to provide only the services of the Planning Department to customers without any corresponding engineering services. This argument is of no moment. The activities performed by the Planning Department constitute civil engineering under State law, regardless of whether they were provided in separate contracts. Also, unlike the taxpayer in Alron Engg., petitioner did not separately account for the activities of the Planning Department in its books and records.

We conclude that petitioner satisfies the function test by having 95 percent or more of its employees' time spent providing

engineering services or services incidental to engineering services.  We also conclude that petitioner satisfies the ownership test because all of its stock was held by employees performing services in connection with a qualifying field. Accordingly, petitioner is a qualified personal service corporation subject to the flat tax rate under section 11(b)(2) for the year at issue.

To reflect the foregoing,

Decision will be entered

for respondent.